## ANDREW J. DUNCAN *vs.* TIMOTHY BANCROFT.

A brook entered the defendant's land and there divided into two channels, one of which flowing southerly, continued through the defendant's land, and the other, flowing easterly, entered the plaintiff's land. In an action by the plaintiff against the defendant for diverting the water from this easterly channel, judgment was rendered for the plaintiff on an award which found that the defendant diverted the water from this channel so as to prevent its flowing into and upon the plaintiff's land. *Held*, in a subsequent action between the parties for diverting the water from this channel, covering a period of time later than that covered by the former action, in which the record of the former action was put in evidence, that the fact that the water continued to flow in the southerly channel during the time covered by the later action, as it had done during the time covered by the former action, was evidence of a continuance of the diversion; but that the defendant could introduce evidence that a portion of the water had flowed through the southerly channel from time immemorial, and that the soil of the easterly channel was such that, without work upon it, that channel would fill up of itself, and had so filled up.

TORT. Writ dated September 20, 1870. The first count of the declaration alleged that the plaintiff was the owner of a farm in Worcester; " that a stream of water has always run through the land of the defendant, through a culvert in the wall between land of the plaintiff and land of the defendant, called the upper culvert, to and through the land of the plaintiff; that the natural course of said brook is from the land of the defendant through said upper culvert on to the land of the plaintiff, and thence over the land of the plaintiff, around the knoll, so called, running easterly thereof, and thence again into the land of the defendant; " that the plaintiff and those under whom he claimed had and exercised for more than forty years the right to use a part of the

water for the purpose of irrigation, but that the defendant on April 1, 1862, and on divers other days since, diverted the water from its natural channel so as to prevent its flowing through the upper culvert into and upon the plaintiff's land. The second count alleged that on April 1, 1862, and on divers other days since, the defendant obstructed the water in its passage from his land to and through the plaintiff's land, and diverted the water by digging a canal or ditch on his own land.

At the trial in the Superior Court, before *Bacon*, J., the plaintiff put in evidence the record of an action of tort, brought by him against the defendant to recover damages for the diversion and obstruction upon the defendant's land, at divers times between March 1, 1862, and the date of the writ, May 28, 1865, of a stream running through said land, and which the plaintiff had a right to have flow in and upon his land. It appeared from the record that this case was referred to arbitrators, who by their written award found " that the natural course of the stream of water named in the declaration is from the land of the defendant through the culvert in the line wall, called the upper culvert, into the land of the plaintiff, and thence over said land of the plaintiff, around the knoll, so called, running easterly thereof, and thence again into land of the defendant ; that the water of said stream flowed in said channel until diverted from it by the defendant ; that for a period of more than forty years, the plaintiff and those under whom he claims have exercised the right to use a part of said water, for purposes of irrigation, by diverting it from said natural channel, at a point on said land of the plaintiff ; that he has a right to use such water, for said purpose, in the manner and to the extent to which the same has heretofore been used by him and his grantors ; that the defendant did divert said water from its said natural channel, so as to prevent its flowing through said upper culvert into and upon the land of the plaintiff, and thereby deprived the plaintiff of his right to use said water for the purpose of irrigation as aforesaid ; " and assessed damages in favor of the plaintiff, for which judgment was rendered.

The plaintiff also put in evidence the record of two other suits brought by him against the defendant for the diversion and ob-

struction of a stream of water, in both of which judgment was rendered for him.    The time covered by the declaration in the first of these two other suits was from April 1, 1865, to October 20, 1868, and by the declaration in the second was from October 20, 1868, to November 27, 1868.

The defendant put in evidence a plan, from which it appeared that a stream entered the defendant's land on the north side, and flowed in a southerly direction to a point in the defendant's land, indicated on the plan as a "stake and board;" that it there divided into two streams, one of which continued to flow southerly through the defendant's land, and the other of which flowed easterly till it came to the plaintiff's land, which adjoined the land of the defendant, where it crossed the boundary line through the upper culvert, and thence flowed southerly through the plaintiff's land, returning lower down into the defendant's land.

It appeared "that in January and April 1868 the channel leading southerly from the point indicated as a 'stake and board,' was, and down to May 29, 1869, continued to be, open and the water to flow therein; but there was no evidence that the defendant had ever obstructed the channel leading to the upper culvert, nor did the plaintiff rely upon any such obstruction, but only upon a diversion of the water; and it appeared that the water flowed, during the first portion of the time mentioned in the writ, through the south channel, and did not flow in the channel to the upper culvert, and also that it so flowed in the south channel during the time mentioned in the former writs and award, on which judgment had been rendered."    The plaintiff contended that this was *prima facie* evidence of the continuance of a diversion of the watercourse created or caused by the defendant, and for which the former judgments were rendered; but the defendant contended and asked the judge to rule, "that it would not be *prima facie* evidence, either of a diversion of the stream itself, or of the maintenance of the diversion of the stream for which the judgments were rendered in the former suits, or that the judgments in the former suits were rendered for a diversion of the water of the stream; and that mere neglect to restore the stream to its former condition, without active interference to prevent the water from

flowing in its natural channel, would not sustain the plaintiff's declaration." The judge refused so to rule, and ruled " that the fact that the water continued to flow in the south channel, during a portion of the time mentioned in the plaintiff's writ, as it had done during the time mentioned in the former writs, and the time referred to in the award, was *prima facie* evidence of the maintenance of the nuisance complained of ; and that such evidence, without evidence of active interference to prevent the water from flowing in its natural channel, would be sufficient evidence of the cause of action set out in the declaration to enable the plaintiff to maintain the present action."

The defendant denied that the channel running from the stake and board to and through the upper culvert was a natural channel : but if, on account of the award, he was estopped to show that fact, he contended that the stream divided at the stake and board, forming either a natural or an artificial channel, through which he had a right to take a portion of the water from that point southerly, by means of the southerly channel ; and he offered evidence to show that the southerly channel through which the water flowed, and on account of which the plaintiff claimed the right to maintain his action, was a channel through which a portion of the water had flowed from time immemorial ; but the judge excluded the evidence.

The defendant also, to account for the fact that the water ceased to flow in the channel leading from the stake and board to the plaintiff's land, offered to show that that channel was originally dug by the plaintiff ; that in 1864 and from thence to May 29, 1869, the plaintiff neglected to keep it open ; that the soil was of such a character that, without work upon it, the channel in time would fill up of itself ; and that it did fill up of itself during that time. This evidence the judge rejected, but allowed the defendant to offer evidence tending to prove that the plaintiff neglected to keep the channel open during said time, and that from natural causes during said time it filled up of itself.

Under these rulings, refusals to rule and exclusion of evidence, the defendant consented to a verdict for the plaintiff, which was returned, and the defendant alleged exceptions.

*G. F. Verry,* for the defendant.

*H. B. Staples,* (*A. Thayer* with him,) for the plaintiff.

AMES, J. It appears from the bill of exceptions and the accompanying plan that the brook, about which this controversy has arisen, enters the defendant's land on the north side, and flows in a southerly direction to a point indicated on the plan as the "stake and board," where it divides into two streams. One of the two flows in a southerly direction through the defendant's land, without entering upon the plaintiff's premises at all. The other stream flows first in an easterly direction, and crosses the boundary line between the two parties at a point called the upper culvert, and then flows on in a southerly direction through the plaintiff's land, returning, lower down its course, into the defendant's land. It appears also that in several actions at law against this defendant (the first one of which was decided upon the award of arbitrators) the plaintiff has, by the judgment of the Superior Court, established his right to use, for the purposes of irrigation, a part of the water so flowing over his land. The award of the arbitrators was that "the natural course of the stream of water" (named in the plaintiff's declaration in the first of the actions) "is from the land of the defendant, through the culvert in the line wall, called the upper culvert, into the land of the plaintiff," around the knoll, and "thence again into land of the defendant;" that "for a period of more than forty years, the plaintiff and those under whom he claims have exercised the right to use a part of said water, for purposes of irrigation, by diverting it from said natural channel at a point on said land of the plaintiff; that he has a right to use such water for said purpose," and "that the defendant did divert said water from its said natural channel, so as to prevent its flowing through said upper culvert into and upon the land of the plaintiff, and thereby deprived the plaintiff of his right to use said water for the purpose of irrigation as aforesaid." The effect of this judgment was that it is to be considered as settled, for all future litigation between these parties, that the stream of water entering the plaintiff's land at the upper culvert was a natural stream, which he had a right to use in the manner described in the award, and which the defend-

ant had no right so to obstruct or divert as to impair or interfere with that use.

But we do not think it a necessary deduction from the award, and the various judgments in the plaintiff's favor, that the defendant had not also a right to the enjoyment of so much of the brook as flowed through his own land, without crossing the boundary line between the two estates. The award by no means implies that the natural course of all the waters of the brook was through the upper culvert into the plaintiff's land. The stream described in the award was the one which ran through the defendant's land into the plaintiff's, and according to the award the plaintiff is entitled to have that stream still run there, without interruption from the defendant. But it does not follow, because the defendant has no right to interrupt that stream, that he has not the right to the enjoyment of the other part of the stream, that naturally flows, or has from time immemorial flowed, through his own land, without entering the land of the plaintiff.

If it appeared that, without any artificial obstruction to the flow of the water to and through the upper culvert, that flow had ceased, but that the flow on the defendant's land had continued ; and if it also appeared that such had been the state of things during the time mentioned in the former suits and covered by the former judgments, these facts would be competent evidence tending to show the continuance of the same diversion of the water by the defendant which was determined by the judgment in those suits to be a wrongful act on his part. But we do not think it would be necessarily conclusive against him. If he should show that, without fault on his part, the channel leading to the upper culvert and so into the plaintiff's land had become obstructed, it would be a fact which he might use in his defence. For that purpose, it was allowable for him to show the character of the soil through which the channel passed, and that it was such as to require attention and labor to keep it open. We do not think that he should have been restricted, upon this point, to evidence of neglect on the part of the plaintiff.

Although the defendant could not lawfully contradict the award, or impeach the former judgments, and although it must

be considered as conclusively settled that the stream across the plaintiff's land was a natural watercourse, yet the defendant should have been permitted to show, if he could, that the stream across his own land was also an ancient watercourse ; that during the time mentioned in the writ it was flowing as it had done from time immemorial, and that he had not, by any act of his own, enlarged the supply of his own brook by diminishing that of the plaintiff's brook.

The evidence offered by the defendant, to prove that the channel from the " stake and board " to the upper culvert was originally dug by the plaintiff, was in contradiction of the award, and was rightfully rejected. But although the judgments were conclusive to show that the defendant was in the wrong at the periods of time covered by them, they do not show that he was bound to turn the entire brook into the plaintiff's channel, or that the subsequent failure of that channel to convey the water was necessarily owing to any misfeasance or nonfeasance on his part. That would still be a question of fact to be passed upon by the jury.

*Exceptions sustained.*